HARRELD, et al. *v.* MISSISSIPPI STATE HIGHWAY COMMISSION

No. 40808 June 9, 1958 103 So. 2d 852

*Charles W. Busby*, Heidelberg; *Woodliff, Castle &
Franks,* Jackson, for appellants.

4

*Matthew Harper, Jr.,* Asst. Atty. Gen.; *Satterfield, Shell, Williams & Buford, K. Hayes Callicutt,* Jackson, for appellee.

McGehee, C. J.

The appellants, W. E. Harreld and the Harreld Chevrolet Company, a corporation owned by W. E. Harreld and his wife with the exception of one qualifying share, sued the appellee and cross-appellant, Mississippi State Highway Commission, in the Chancery Court of Hinds County, Mississippi, for the sum of $352,800 for W. E. Harreld and $51,470 for the Harreld Chevrolet Company for alleged damages claimed to have been sustained on account of the anticipated closure of direct access at two points on the new four lane U. S. Highway 51 south of the City of Jackson of a new link of highway on U. S. Highway 51, as now being constructed.

The Chancery Court of Hinds County upon the trial, after hearing voluminous testimony contained in an eight-volume record and hearing the arguments of counsel, and taking the case under advisement upon the submission of briefs filed by counsel, found as a fact that the appellant W. E. Harreld owns frontage of 2,182 feet more or less on the east side of the said new highway and 2,409 feet on the west side thereof, and adjacent thereto; that the appellant Harreld Chevrolet Company owns adjacent to said new highway a frontage of 181.7 feet more or less, all beginning approximately 3.3 miles south of what is known as the "clover-leaf" in South Jackson, and which new highway runs from the said clover-leaf through the woods between the old U. S. Highway 51 and the track of the Illinois Central Railroad for a distance of approximately fifteen miles to the northernmost corporate limits of the Town of Terry, in Hinds County, Mississippi, as now constructed, and being constructed, as a link in the new U. S. Highway 51 of the National System of Interstate and Defense Highways. The trial court further found that the complainants purchased from the Capital-State Realty Company, which was owned and controlled by W. E. Harreld, and from W. E. Harreld, individually, their original tract of land, consisting of approximately 76 acres, in the year 1953 for approximately $40,000.

On April 14, 1953, certain judgments were rendered by consent in condemnation proceedings in the County Court of Hinds County, Mississippi, for three parcels of the lands of the complainants, one of which said judgments was in favor of the Capital-State Realty Company, et al., predecessor in title of the appellants, for the sum of $12,800, one being in favor of the appellant W. E. Harreld, et al. for $16,700, and the other in favor of the Harreld Chevrolet Company, et al. for the sum of $3,000, but it appears that one parcel of said land is not involved in the above-mentioned frontage on the said new highway. The said three consent judgments aggregated the sum of $32,500.

At the time of the institution of the said condemnation proceedings and at the time of the rendition of the three above-mentioned consent judgments, the State Legislature had enacted Chapter 6 of the Laws of the Ex. Sess. of 1949, and Section 11, Subsection (h), thereof provides, among other things, for certain powers and authority of the State Highway Commission, as follows: "To provide for boulevard stops, restricted entrances to main highways and access driveways, neutral grounds and roadside parks, and to erect all suitable direction and warning signs, and to provide access roads in or to municipalities where necessary; to provide limited access facilities when and where deemed necessary, such a faciliay being defined as a highway or streets especially designed or designated for through traffic and over, from or to which owners or occupants of abutting land or other persons have only such limited right or easement of access as may be prescribed by the State Highway Commission * * *"

In other words, the consent judgments rendered in the condemnation proceedings on April 14, 1953, resulted in the Mississippi State Highway Commission acquiring all of the power and authority conferred upon the said Commission by Chapter 6, Laws Ex. Sess. of 1949.

Subsequent to the acquisition of the right of way through appellants' property, the State Highway Commission constructed a four lane paved highway which divided the property of the appellants in such manner as to leave to them respectively, the frontage thereon hereinbefore mentioned. There were also constructed median strips dividing two of the through highway lanes from the other two, with cross-overs at reasonable distances from each other, with suitable interchanges for going to the outer through lanes from either side of the right of way, with frontage roads on the right of way for access from the abutting property to such cross-overs and interchanges from such property on each side of the four lane through highway.

During the course of the construction of the said new highway on the right of way through the property of the appellants, the said appellant W. E. Harreld obtained from the Highway Commission a temporary permit for the construction of some direct access roads with entrances into the main traveled lanes of said new highway at two points, one at the point where Daniel Lake Boulevard intersects said new highway, and the other just south of his property where Mason Boulevard now intersects with the said new highway, and where there is a crossover through the median strip of said main highway.

On March 25, 1952, the State Highway Commission, pursuant to its authority under Chapter 6 of the Laws of 1949, Ex. Sess., established by a resolution duly passed and entered upon its minutes a policy setting forth that: "Direct entrance will further be provided to the highway on a temporary basis, if frontage roads are not in existence nor intended for immediate construction, it being later intended when property adjoining the highway has developed to sufficient extent to justify a frontage road, at which time, if the highway or street connection is on a temporary basis, that said highway or street connect

with said frontage road rather than directly with the main traveled way." The resolution further provided. that: "It is further a policy of this Commission where adequate rights of way widths can be provided to provide frontage roads adequate to controlled access highways when development of property adjoining the highway and traffic demands require it. Interim or temporary permits will be issued, upon written requests, to individuals for access to the next traveled lane when such frontage road is not immediately available, but all permits of this nature will be classified as temporary until the frontage road might be constructed. At such time frontage road is constructed, all said temporary connections will be removed and the property served by the frontage roads which will be connected to the highway only at points which are served by openings in the medial divider. Access from the frontage road to the highway may be provided by connecting said frontage roads or streets or designated connections which have access to and across the traveled way."

The two permits issued to the appellant W. E. Harreld for the construction of direct access roads with entrances into the main traveled lanes of the said new highway at the two points hereinbefore mentioned, contain the following language to wit: "That the said Highway Department may at any time require and compel the removal or reconstruction of said driveway or other facility therein described or referred to as and when said State Highway Department deems it necessary. All expense of said removal or reconstruction is to be borne exclusively by the applicant, and the State Highway Department is to be in no way liable."

The suit of the appellants sought an injunction to prohibit the State Highway Commission from closing the entrances onto the main traveled lanes at the two points hereinbefore mentioned, but which injunction was denied by the trial court. However, the trial court granted the

appellants an injunction to the extent of requiring the Highway Commission to keep the said entrances open until the Commission shall have constructed a frontage road on the highway on each side of the main traveled four lane highway so as to afford the appellants reasonable access into the main highway at the interchanges at McDowell Road north and Savanna Street to the south, with complainants having full, free and complete access to said surface or frontage roads at all points along their property on both sides of said main highway.

The trial court further found as a fact that the plans of the State Highway Department shown to Harreld at the time of the acquisition of the right of way through the land clearly indicated that he was to have access to the main travelways both north and south on the new highway with complete cross-overs at the two points hereinbefore mentioned, one a the Daniel Loop Boulevard crossing, and the other just south of his property where Mason Boulevard now intersects the said new highway, and where there has been constructed a cross-over through the median strip of the said main highway; but that the plans showing access at these two points, disclosed thereon a "Note. This is a future multiple lane limited access highway. Temporary private driveways and ramps may be constructed where shown on the plans for use until such time as this highway is completed as a multiple lane highway, after which time temporary driveways and ramps may be restricted to connect to the highway lane or service drive adjacent to the property served."

In addition to this, the trial court found, and correctly so, "that the complainant Harreld, himself testified frankly and forthright(ly) that he knew that the Highway Department had the right at all times in question here and for some years prior thereto to control the access to main highways throughout the State of Mississippi and that the Highway Department could at any time

require the change of any access road from private property abutting the highway.''

It should be here stated and observed, with emphasis, that there is no question involved of the State Highway Commission cutting off the direct access that the abutting property owner may have had to a pre-existing highway, and to which access he may have acquired a vested interest or easement for the purpose of ingress or egress to a pre-existing highway. The four lane highway here involved is located wholly outside of the right of way of old Highway 51 from the so-called clover-leaf in South Jackson to the northern corporate limits of the Town of Terry, and is being constructed as a link of the proposed new U. S. Highway 51 in the National System of Interstate and Defense Highways under Public Law No. 627-84th Congress, Title 1, Federal Aid Act of 1956, approved by the President on June 29, 1956, under which the Federal Government is to bear ninety percent of the cost, while the states through which the highways may traverse are to bear ten percent of the cost of said highways within the state. This link of new U. S. Highway 51 had not been accepted by the U. S. Department of Commerce, Bureau of Public Roads, as a part of the National System of Interstate and Defense Highways at the time of the trial of this cause in April 1957, but the proof in the case discloses that it was the opinion at the time of the hearing that the said link of highway would be accepted as a part of the National System of Interstate and Defense Highways if and when the same was constructed to meet the requirements of the U. S. Department of Commerce, Bureau of Public Roads, and with which requirements the State Highway Commission is endeavoring to comply.

This suit was brought on October 15, 1955, prior to the official opening of the said new link of the four lane through highway on November 5, 1955, through the appellants' property, and at a time when no member of the traveling public had acquired any right of direct or other

access thereto. However, no point is made by the defendant Mississippi State Highway Commission as to whether or not this suit was prematurely filed, since it was deemed to be desirable that the Highway Commission should ascertain the extent of its rights and the measure of its liability that may result from its action in closing direct access to the main through lanes of the new highway in compliance with requirements of the U. S. Department of Commerce, Bureau of Public Roads. The fact remains, however, that the appellants had no right of direct access to the four lane through new highway, along their abutting property, since the said new link of the U. S. Highway 51 at that place did not exist until November 5, 1955.

Prior to the enactment by the Congress of the National System of Interstate and Defense Highways Act in June 1956, the complainant Harreld had negotiated with one or more persons for the sale of plots of ground adjacent to the said new U. S. Highway 51, then under construction, and he had approached certain officials of the State Highway Commission concerning the matter of whether the direct access to the new highway at Daniel Lake Loop Boulevard and the one near the south end of his property would be allowed to remain as permanent accesses. He made considerable effort, as found by the chancellor, to get the Highway Commission to let him know what the attitude of the Commission was going to be concerning these accesses, and he evidently made these efforts to avoid waiting to develop his own property along the highway, fully realizing that the permits under which he had constructed these access entrances were temporary as clearly stated thereon. At the time of the appearance of the said complainant at a meeting of the Highway Commission, seeking the information above-mentioned, the Commission necessarily knew that it could not give him any assurance as to whether or not the two accesses in question would be closed and that there would be sub-

stituted in lieu thereof frontage roads along all of the property of the appellants abutting the said highway which would afford to him reasonable accesses to the main highway, and the Commission therefore advised him that they could not tell him what would be done because they did not know. The Act then pending in Congress provided for ninety percent of the cost of construction of this highway to be paid by the Federal Government under the requirement that the said National System of Interstate and Defense Highways would be constructed under the approval of the U. S. Department of Commerce, Bureau of Public Roads.

Nevertheless, the appellants went ahead with their effort to improve their abutting property for commercial purposes without any assurances from the Highway Department that the direct access at Daniel Loop Boulevard near the north end of their abutting property and the direct access at Mason Boulevard, a short distance south of their abutting property, would remain open for ingress and egress to the main highway on a permanent basis.

 █ In their efforts to develop their abutting property for commercial purposes the appellants graded down their abutting property along the west side of the highway, after removing the trees therefrom, and thereby damaged the same for residential purposes, for which use the chancellor found it was the better suited. They removed a good portion of the soil from the surface of the frontage on the west side of the highway and placed the same on their abutting property to the east side thereof, in an effort to improve their property on both sides of the highway for commercial purposes. However, the appellant Harreld, in doing this work, placed some of the soil removed from his abutting property on the west side of the highway onto the right of way of the new highway, filling in low places thereon, and in building the frontage roads on the sides of the four lane through highway. The appellant had no legal contract

with the State Highway Commission for doing the said work, and contracts foi such work are required by law to be on competitive bids. The Highway Department concedes, however, in its brief that it should pay to the appellants the sum of $6,812.66 as a reasonable compensation per cubic yard for the dirt that he placed on the right of way of the highway for the construction of the frontage roads. The trial court found as a fact that the remaining land of the appellants had not been damaged at all by the construction of the new highway on its right of way across their land. Moreover, the chancellor found upon conflicting evidence that in fact the remaining property of the appellants would be greatly enhanced in value by the location and construction of this "freeway" through their property, with the limited access thereto hereinbefore mentioned. But, without regard to the findings of fact on that particular issue, the State Highway Commission had the legal right to do that of which the appellants complain in this suit, under and by virtue of Section 11, Chapter 6, Laws of 1949, Ex. Sess., the consent judgments of April 14, 1953, in the three condemnation proceedings, the temporary permits issued to appellant Harreld, and by virtue of the reasonable exercise of the police powers of the State for the safety of human life and the regulation of traffic upon this highway.

We are cognizant of the fact that if the case at bar were a condemnation proceeding, the chancellor would have been prohibited by Section 2760, Code of 1942, from taking into consideration "the supposed benefits incident to the public use for which the application (in eminent domain) is made"; but this is not such a proceeding. It is a suit for damages alleged to have accrued to the appellants by reason of the threat or anticipated intention of the Highway Department to close the two direct accesses at Daniel Loop Boulevard and Mason Boulevard, —damages for the exercise of a power and authority vested in the State Highway Commission in the exercise of its

police power for the safety of human life and for the regulation of traffic on the highway, and a power expressly conferred upon the Commission by the State Legislature by Chapter 6, Laws of 1949, Ex. Sess., and set forth in the temporary permits granted to the appellant Harreld for the construction of the two direct accesses in question. The authority of the Highway Commission in its exercise of the said police power of the State will be later discussed with citation of authority in this opinion.

During the course of the said construction after the right of way was acquired by condemnation on April 14, 1953, the appellant Harreld constructed a water tank on a tower on the said abutting property on the east side near the north end thereof, and installed pipes underneath the new four lane highway which has now been completed, so as to pipe water from the tank to his abutting property on the west side of the highway for use in the commercial development thereof. The appellants asked to be reimbursed in the sum of $25,000 as a replacement cost of the said water tank. This item of damages claimed by them was denied, but the chancellor allowed the appellants the sum of $1,500 for the construction of the pipes from the water tank to the west side of the highway, and underneath the same, on the ground that he could not use the abutting property immediately west of the highway for commercial purposes, and would not therefore have further need for the said piping from the east side to the west side of the highway.

The appellant Harreld constructed the water tank with pipes therefrom across to the west side of the highway for the alleged purpose of erecting a motel on the site where the tank is located, and for the improvement of his own property for commercial use on the west side of the highway. We do not think that the $1,500 item of damages for installing the pipes from the water tank to the west side of the highway is a proper item of recovery as damages against the State Highway Commission.

■■ The trial court also allowed the appellants the sum of $15,000 as damages to the abutting property on the west side of the highway in converting the same from residential to commercial property, upon the theory that except for the fact that he thought the two direct accesses in question would be kept open he would not have converted the property on the west side of the highway from residential to commercial property. We do not think that the appellee Mississippi State Highway Commission is legally liable for this item of damages, which the appellants incurred in an effort to make their property more valuable, and because of their unwillingness to wait until they had the assurance from the Commission that the two direct accesses in question would be kept open. We also think that the item of $6,000 allowed to the appellant W. E. Harreld, at $100 per day for sixty days of his time in performing the work that he did on the highway right of way, cannot be legally recovered from the State Highway Commission. He had no legal and valid contract with the State Highway Commission for performing this work, and he did the work at his own peril, and notwithstanding the fact that the permits upon which he was relying for the right to go ahead and improve his property stated on their face that they were temporary in character, and that the State Highway Commission had the acknowledged right to close the direct accesses in question at any time that it might find it necessary to do so. These accesses have not yet been closed, but the proof discloses that it will be necessary that the same shall be done to meet the requirements of the U. S. Deparment of Commerce, Bureau of Public Roads.

The written opinion of the trial court rendered on both the testimony that was undisputed and that which is in conflict is a splendid analysis of the facts developed upon the trial, and his conclusions in regard thereto not only cannot be said to be manifestly wrong, but the same is

in our opinion a correct finding of the facts, with the exception that we are unable to agree with his finding that the appellant W. E. Harreld was misled in the matter, and that he was therefore entitled to recover the items of damages allowed in excess of the $6,812.66 which was conceded by the appellee to be due to the appellants. We are unable to find any substantial evidence that he was misled at all. His permits to construct the direct accesses at the two points hereinbefore mentioned disclose on their face that such permits were temporary, and both the permits and Section 11 of Chapter 6 of the Laws of 1949, Ex. Sess., (knowledge of which he was charged under the law), informed him of the rights of the State Highway Commission in the premises. The chancellor found that he knew of these rights of the State Highway Commission, and that he frankly admitted that he had knowledge of the said rights of the appellee. His testimony clearly disclosed that instead of the State Highway Commission misleading him, he was being informed by the Commission all the while that it could not tell him definitely whether the direct accesses at the two points involved would be kept open. He appeared before the Commission to get assurance that these accesses would be kept open permanently in order that he might give such assurance to the prospective buyers of his property along the highway for commercial purposes, and the testimony shows without dispute that at the hearing before the State Highway Commission, he was again informed that the Commission could not give him the assurance for the reason that the Commission "did not know." The facts disclose that he was just in too much of a hurry to develop his property for sale to be willing to wait until he knew whether or not the accesses at the two points in question would be left open permanently. The proof shows that he was advised of the pending legislation in the Congress and that thereunder the newly constructed highway through his property would be subject to the

approval of the U. S. Department of Commerce, Bureau of Public Roads.

25 Am. Jur., Highways, Section 253, p. 544, reads, in part, as follows: "The use of highways and streets may be limited, controlled, and regulated by the public authority in the exercise of the police power whenever and to the extent necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people, and is subject to such reasonable and impartial regulations adopted pursuant to this power as are calculated to secure to the general public the largest practical benefit from the enjoyment of the easement, and to provide for their safety while using it. * * *" See also 40 C. J. S., Highways, Section 232, p. 241, wherein it is said: "This power is an exercise of the police power of the state to protect the highways, and promote the safety, peace, health, morals, and general welfare of the public."

It has always been true in this country and in other countries that the citizen has been proud of his rights, and has been alert to protect them, but sometimes the time comes when the citizen must exercise even the higher right of giving up what he conceives to be his right, in the interest of the public welfare.

In the case of State, By and Through State Highway Commission v. Burk, et al., 200 Ore. 211, 265 P. 2d 783, the Supreme Court of Oregon held, among other things, that "Private rights relative to highways may be regulated in many ways under the police power, and that without compensation." The Court further said "The congestion of population in the cities, the amazing increase of rapid automobile transportation, the delays and perils incident to the use of the conventional two-way unrestricted-access highways have rendered imperative the establishment of non-access or limited-access highways or freeways in the interest of the public convenience and necessity." And the Court further held that an instruc-

tion that the jury, in determining the fair cash value of all such owners' property, should not consider that the abutting owners owned an appurtenant right or easement of access to and from the highway, under the facts of that case, and that in determining such value of their remaining property not taken should not consider that such property had any right or easement of accesses taken from it, and hence should not allow any damages therefor, was not reversible error.

 █ From the foregoing decision, which is being cited in the case of Mrs. Winnie Robbins Muse v. Mississippi State Highway Commission, No. 40,883, this day decided, and the New York and Wisconsin cases of Impagliazzo v. Nassau County, et al., 123 N. Y. S. 2d 819, and Carazalla, et al. v. State of Wisconsin and Marathon County Highway Commission, 269 Wis. 593, 71 N. W. 2d 276, we have concluded that where a new non-access highway is being constructed outside of the right of way of an old highway, the abutting property owners are not entitled to require the State Highway Commission by an injunction to maintain direct accesses from their property into the through lanes of the new highway, constructed for fast traffic, where the Commission is substituting in lieu of such accesses, a frontage road on the highway such as to afford the abutting property owners reasonably safe and convenient accesses from all of their abutting property to the through thoroughfare by means of such frontage road and reasonably convenient interchanges for entrance into the main, through traffic lanes; and that such action on the part of the State Highway Commission is a reasonable exercise of the police power of the State in the interest of the protection of human life and the regulation of public traffic. We think that the case of People v. Ricciardi, et al., 23 Cal. 2d 390, 144 P. 2d 799, decided by a four to three decision of the Supreme Court of California, is distinguishable from the case at bar on its factual situation.

Eliminating the item of $1,500 for the water pipes underneath the highway, the $15,000 item allowed as damages because of the work which was done by the complainant Harreld in an effort to improve his property on the west side of the highway, and the $6,000 at $100 per day for a period of sixty days for the time of the said appellant in supervising the work, without any contract with the Highway Commission in that behalf, we are of the opinion that the decree should have been for only $6,812.66, the item of damages at so much per cubic yard for the dirt placed on the highway, and which amount of liability is conceded by appellee in its brief, we have concluded that the case, on the direct appeal of the appellants, to the extent of the damages allowed in excess of the sum of $6,812.66 for dirt placed on the highway, and the benefit of which was received by the appellee, should be reversed; that is to say that the case should be reversed and judgment rendered here in favor of appellees on the cross-appeal wherein the appellee complains of the allowance to the appellants of $29,312.66 instead of the admitted liability of $6,812.66 on the part of the appellee.

Affirmed in part, and reversed in part, both on direct and cross-appeals, and judgment here accordingly.

All Justices concur.