MISSISSIPPI STATE HIGHWAY COMMISSION *v.* GABBERT, et al.

No. 41521 April 25, 1960 119 So. 2d 774

*Stone & Stone,* Coffeeville; *Murray L. Williams,* Water Valley; *Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson, for appellant.

*Breland & Whitten,* Sumner, for appellees.

HALL, J.

This suit was instiuted by the Mississippi State High-way Commission by eminent domain proceedings against Mr. and Mrs. R. C. Gabbert for condemnation and appropriation of their home place in Yalobusha County. The Gabbert home was situated at a little town called Scobey and consisted of approximately six acres of land.

At the trial the jury viewed the premises and the case first resulted in a verdict for $15,000 in favor of the Gabberts on May 6, 1959, but on appeal to the circuit court there was a final verdict in favor of the Gabberts for $12,000. A motion for a new trial in the circuit court was overruled on July 24, 1959, and the Highway Commission brings the case to this Court on appeal.

The appellant assigns numerous errors as grounds for reversal and most of which are in general terms such as that the verdict of the jury is contrary to the law and evidence and there is no competent evidence to sustain the verdict of the jury. The appellant under this ground would have us adopt and accept all of the evidence for the appellant and reject all of the evidence for the appellees.

The appellant also contends that the lower court erred in admitting improper evidence over the objection of the appellant but their argument on this point is practically nil.

The appellant also claims error in refusal to grant all the instructions requested by it but does not point out any error in the refusal of any instruction.

The appellant also argues that the verdict of the jury is so excessive as to evince bias, passion and prejudice on the part of the jury and it is likewise argued that the verdict is so excessive and unreasonable as to shock the enlightened conscience of the Court. Actually the appellant again would have us accept all of its testimony and reject the other testimony for the appellees.

It is also argued that the lower court erred in overruling the appellant's motion for a new trial.

There was an abundance of substantial, competent evidence that the Gabberts' place, consisting of six acres of land was worth approximately $17,000 before the taking and $2,000 after the taking, the difference being $15,000. Various competent witnesses gave their opinion as to the values and there was no great difference between them.

For the Gabberts, Mr. Elmer Gabbert testified that he was familiar with land values and that his place was worth $17,000 before the taking and $2,000 after the taking, leaving a net loss of $15,000.

Charles L. Early, a licensed real estate agent and land appraiser for nineteen years, who, prior to that time had spent twelve years in the tax assessor's office, testified that he was familiar with the Gabbert land and with land values and that the Gabbert property was worth $17,500 before the taking and $3,962 afterward, making a difference of $13,538.

Billy Hartley, who lives three miles from the Gabbert home, testified that he was familiar with and knows land values in that community and that the cash market value of the Gabbert property before the taking was

$16,000, and only $4,000 after the taking, leaving a net loss of $12,000.

W. V. Craig testified that he was a member of the board of supervisors and knows land values and was familiar with the Gabbert home and that the cash value before the taking was $16,000 and $4,000 after the taking, leaving a net loss of $12,000.

C. B. Walker, who has lived in Tillatoba since 1945, testified that he knows land values and knows the Gabbert homestead, and that it was reasonably worth $15,-500 before the taking and that he knows of the proposed work of the Highway Department and that the property will then be worth only $3,500, leaving a $12,000 loss.

With the exception of Mr. Gabbert, all of the parties named were wholly disintered witnesses and thoroughly familiar with what they were talking about. As against this, there was testimony of two employees of the Highway Department and two bankers who live all of the way across the county from the property in question, and a man by the name of J. B. Massie gave the value of the Gabbert place at $11,660 before the taking of the 3.2 acres and $8,185 after the taking, leaving a difference of only $3,475. It must be borne in mind that the jury viewed the premises in this case and after such view it first returned a verdict for $15,000 in eminent domain court, but on appeal another jury returned a verdict for $12,000, and that is what we are confronted with in this case. The Gabbert place had a seven room house on it, 3 bedrooms, kitchen, bathroom, and combination living and dining room, and with a well of tiled curb fitted with a Myers automatic pressure pump and hot and cold running water. That the Gabberts are sustaining a substantial loss is well established by competent evidence but the appellant seems to assume the position that because no other house in the Scobey community had sold for $15,500 or anywhere near that amount that this was sufficient evidence that the Gabbert place was not worth that figure.

The question in this case is not the value of some other place but only the Gabbert place, and we repeat that the evidence supporting the value of the Gabbert place is thoroughly competent in every respect, and that the mere fact that nobody else had paid $15,500 for a home in the Scobey community is no evidence whatsoever that the Gabbert place was not worth that amount.

In the final hearing of this case the learned circuit judge was most fair in every respect in all of his rulings and there is no showing whatsoever of any error committed by him in the trial. We are of the opinion that after a careful review of the entire record in this case the judgment of the lower court was correct and should be affirmed. We are unwilling to substitute the opinion of the bankers for the verdict of a jury where that verdict is supported so overwhelmingly by the record in the case.

After the taking, the Gabberts will have only about one and one-half acres of land left out of their original tract of five or six acres. On the east side of the Gabbert land is the main line track of the Illinois Central Railroad Company. Its embankment is several feet higher than the floor of the Gabbert home. On the west side will be the 28-foot embankment of Highway 55, and the new Coffeeville Road will be raised to a height of three to eight feet above the level of the Gabbert lot. The embankment of this road is within about thirty feet of the front porch of the home. All of the water falling within the triangle where it is situated will flow to the south, and engineers have provided only a 24-inch pipe under the Coffeeville Road to handle it. The Gabbert property will be located in a pit, having walls on all sides a minimum of three feet and a maximum of 28 feet high. The highway which is being constructed by the Highway Department is a limited access highway, and in order to get on it, it is necessary to travel five miles to the south or four miles to the north, and we are of the opinion that there is no error in the judgment of the

lower court and that the same should be affirmed. Such affirmance does not shock our conscience in even the slightest degree.

Affirmed.

*Lee, Holmes* and *Arrington, JJ.,* concur. *Roberds, J.* took no part.

McGEHEE, C. J., dissenting:

The judgment rendered in the trial court in this case was for the sum of $12,000 which amounted to approximately $4,000 per acre for 3.2 acres of unimproved land taken in a condemnation proceeding by the Mississippi State Highway Commission.

According to the testimony of the project engineer and the surveys, the appellees owned approximately 4½ acres. The Highway Commission condemned approximately 3.2 acres thereof, leaving the appellees 1.3 acres on which all of their improvements and trees, except one pear tree, are located. In other words, the 3.2 acres taken was shown not to have any fences, trees or other improvements thereon, except the one pear tree abovementioned. The amount of land originally owned by the appellees from which the 3.2 acres was taken for highway purposes was shown by a map or plat, made a part of the record on appeal, to be approximately 4½ acres according to the measurements and surveys made. All of the witnesses for the appellees, none of whom are shown to have measured the land, stated the acreage to be about five or six acres. The surveys and measurements would control rather than the estimates.

Mr. Elmer Gabbert, one of the appellees, testified that he originally owned six acres of land, that four rooms of the house were about one hundred years old and that he had added three rooms to the house after he bought the place about sixteen years ago. The property is located in the abandoned Town of Scobey in the western part of Yalobusha County, where there is no

longer a store or any other place of business of any kind. It is at least one and one-fourth mile from the nearest country store, and is four or five miles from Tillatoba. The improvements on the property, which the Gabberts still own, are as stated in the controlling opinion herein, and the witnesses for the landowners testified as to values in the manner stated in the controlling opinion herein.

As against the testimony for the landowners, which is summarized in the controlling opinion, the State Highway Commission had Mr. Fred Kendrick, a banker at Water Valley, to inspect the property and testify as to its fair market value before and after the 3.2 acres was condemned for highway purposes. Mr. Kendrick had been engaged in the banking business for 35 years and had done appraisal work over a period of 17 years. Naturally in a rural area where this property was located, a local banker would be able to form an opinion as to property values in that area, and to give the jury the benefit of a fair and impartial statement as to what he honestly thought the land was worth. He testified that the property before the taking was worth $7,000, or not over $7,500, and after the taking $2,500.

Mr. J. M. Fancher, banker at the Coffeeville Branch of the Bank of Water Valley, testified for the Highway Commission, and stated that he had been in the banking business about 38 years and frequently made appraisals of real estate for loan purposes, and that he was familiar with the lands owned by the appellees in the Town of Scobey; that he had inspected the property and that in his opinion the fair cash market value of all of the land owned by the appellees before the taking was $7,500, and after the taking $2,500.

In other words, those two bankers conceded that because of the condition that the property of the appellees would be left in after the construction of the new highway, it would be damaged to the extent of two-thirds of its value, or $5,000, on account of the fact that the new

highway construction would leave an embankment 28 feet high on the west side, and one approximately 4 feet high on the south of the triangular tract not condemned.

It is true that it would be necessary for the appellees to travel about four miles in one direction and about five miles in another to get on the new highway which was being constructed, but there is proof that they will have the same means of getting to and from their property after the taking of the 3.2 acres thereof as they had prior thereto. Moreover, as held in the cases of Muse v. Mississippi State Highway Commission on June 9, 1958, reported in 103 So. 2d 839, 233 Miss. 694, and Harreld, et al. v. Mississippi State Highway Commission, decided the same day, and reported in 103 So. 2d 852, 234 Miss. 1, a landowner has no vested right for direct access onto one of these new interstate highways; and that he has no right of recovery of damages for the inconvenience of traveling a distance to get on such new highway.

The appellee Elmer Gabbert testified that he had a drainage problem on his land before the taking when there were heavy rains.

It is true that this is what is known as a nonaccess highway, No. 55, but it is to be assumed that all of the people living along this highway will be inconvenienced in going from their property onto the highway.

We refrain from discussing the testimony of Mr. Mason and Mr. Massie, witnesses for the Highway Commission, since one of them, whose testimony is in accord with that of Mr. Kendrick and Mr. Fancher as to values, is an employee of the Commission, and they, like some of the witnesses for the landowners, would naturally be interested witnesses.

The purpose of this dissent is to point out the fact that in the opinion of the four dissenting Justices the sum of approximately $4,000 per acre is grossly excessive, and that these Justices were willing to approve a judgment for the landowners for approximately $8,000,

which is $3,000 in excess of the damages fixed by the two bankers, because we realize that the landowners are greatly damaged by the condition that their property will be left in after the taking of the 3.2 acres off of the 4½-acre home site. This opinion assumes that the four Justices who concur in the controlling opinion are in honest disagreement with us as to whether or not a judgment for approximately $4,000 per acre for the 3.2 acres taken is grossly excessive, and this dissent is not intended as a criticism of the views expressed in the controlling opinion, and is written merely for the purpose of expressing our dissent from approving the amount of the verdict rendered in this case.

*Kyle, Ethridge* and *Gillespie, JJ.,* join in this dissent.