MORRIS et al. *v.* MISSISSIPPI STATE HIGHWAY COMMISSION

No. 41818 April 24, 1961 129 So. 2d 367

*Prewitt & Bullard,* Vicksburg, for appellants.

*Teller, Biedenharn & Rogers,* Vicksburg, for appellees.

GILLESPIE, J.

Appellants own approximately 13 acres of land fronting 640 feet on the north side of present U. S. Highway 80 about 8 miles east of Vicksburg. The property extends north a distance of about 1000 feet. The northerly part is somewhat narrower than the highway frontage. Near present U. S. Highway 80 there is located certain improvements on said land, including a residence, restaurant and other buildings. The northerly part is hills and hollows with some small timber growth, except about one acre which had once been used as a garden. This property is leased on a month to month basis for a rental of $150.00 monthly.

Mississippi State Highway Commission, appellee here, filed its petition to condemn 5.52 acres through the northerly part of appellants' land to be used in the relocation and reconstruction of interstate U. S. Highway No. 20 (old U. S. Highway No. 80). The new facility is to be a part of the interstate system of highways. The petition sought to condemn all abutters' rights of access. In other words, the new facility is to be a limited access highway. A parcel of appellant's land containing 1.4 acres will be left to the north of the new highway to which appellants will have no access.

Appellants' access to present U. S. Highway 80 will not be affected by the taking. U. S. Highway 80 will re-

vert to county control upon completion of the new U. S. Highway 20. Present U. S. Highway 80 will connect to new U. S. Highway 20 at interchanges three-fourths of a mile east of appellant's land and five miles west. Obviously, through traffic will be diverted to new U. S. Highway 20.

On trial in county court the jury returned a verdict assessing appellants' damages at $1800. On appeal to the circuit court the case was affirmed. Appellants bring the case to this Court.

The two appraisers for appellee testified that the property remaining after the taking which will lie south of the new highway and on which the residence and commercial buildings are located will not be damaged by the taking. They testified that the damages appellants will sustain consists of the fair market value of the land actually taken, plus the fair market value of 1.4 acres to which appellants will have no access, plus the value of a fence which will be taken. They did not value the part of appellants' land remaining south of the new facility because in their opinion it was not damaged and an appraisal of that portion of appellants' property was not necessary to arrive at the damages. These witnesses testified in effect that since there would be no damage to the property remaining between present U. S. Highway 80 and the new U. S. Highway 20, that a detailed appraisal of that part was unnecessary to arrive at the difference between the value of all the property before the taking and the value of the property remaining after the taking. All this testimony was admitted over the objection of appellants. Appellee's two witnesses gave their opinions that appellants will be damaged $1285 and $1355 respectively.

Appellant John Hughes Morris' testimony was stricken. A witness for appellants testified that appellants' entire property before the taking had a fair market value of $26,046 and $13,866 after the taking, or damage of

$12,180. No motion was made to strike this testimony but it was shown on cross-examination that this witness based the damages in part on the relocation of the highway which would destroy its commercial value, the same being the reason the testimony of appellee John Hughes Morris' testimony was stricken.

Appellants' first assignment of error is as follows: "The loss or impairment of access to a relocated highway is a proper element to be taken into account in determination of fair market value before and after taking." It should be kept in mind that when the new U. S. Highway 20 is constructed appellants will have no right of direct access thereto, but they will have the same access to present U. S. Highway 80 as before, without any restriction or impairment, and U. S. Highway 80 will not be closed but will connect to the new Highway 20 at interchanges as already stated. The Mississippi State Highway Commission will abandon U. S. Highway 80 to county maintenance in accordance with Section 8033, Mississippi Code of 1942. Through traffic will be diverted from U. S. Highway 80 to the new U. S. Highway 20, and appellants offered proof, which the court would not admit, that by reason of the relocation and diversion of traffic the fair market value of their property will be diminished. When appellants' first assignment is related to the facts of the case, two questions arise: (1) When the relocation of the highway results in the diversion of traffic from passing in front of appellants' land which diminishes the fair market value of their land, are they entitled to damages on that account? and (2) does the denial of direct access to a new or relocated highway constitute the taking of a right which is compensable?

We hold that appellants are not entitled to recover damages resulting from diversion of traffic from present U. S. Highway 80 to the new facility. The case of Quinn v. Mississippi State Highway Commission, 194 Miss.

411, 11 So. 2d 810, is in point and holds contrary to appellants' contention. In that case this Court said:

"The mere fact that the plaintiff's home and premises have been left off of the new paved highway does not of itself afford a legal basis for the recovery of damages. Many mercantile store buildings, filling stations, residences, as well as entire towns and cities, are necessarily left off of the new paved highways throughout the State during the progress and work of shortening the distance and eliminating curves in the network of our improved state highway system, but the damages sustained by the property owners thereof are not recoverable 'so long as there remains a public highway, maintained as such, in substantially the same location' where the old highway existed. . . ."

An abutting landowner has no right to the continuation of the flow of traffic past his property and the diminution in the value of land occasioned by public improvements that diverts the flow of traffic past an owner's property is not compensable. Such changes are made in the exercise of the police power and does not constitute the taking or damaging of a property right. Cf. Muse v. Mississippi State Highway Commission, 223 Miss. 694, 103 So. 2d 839. This is established law in most jurisdictions. State v. Linzell, 136 Ohio St. 97, 126 N.E. 2d 53; Johnson's Petition, 344 Pa. 5, 23 A. 2d 880; Board of Commissioners of Sante Fe County v. Slaughter, 49 N.M. 141, 158 P. 2d 859; State v. Peterson (Mont.), 328 P. 2d 617.

When a property owner improves property fronting on a highway he takes a calculated risk that the authorities may find it necessary in improving the highway systems to build new facilities that will divert the traffic from passing in front of his property; and in such cases the property owner is not entitled to damages so long as access to the existing highway remains unimpaired and unrestricted.

Appellants rely on Mississippi State Highway Commission v. Finch, 237 Miss. 314, 114 So. 2d 673, Carney v. Mississippi State Highway Commission, 233 Miss. 598, 103 So. 2d 413, Smith v. Mississippi State Highway Commission, 183 Miss. 741, 184 So. 814, and Wheeler v. State Highway Commission, 212 Miss. 606, 55 So. 2d 225. Those cases are not in point. In all except the Wheeler case there was an existing access right that was either taken, impaired, or restricted. The same appears to be true in the Wheeler case, but the facts are not clear on that point. As already stated, the existing right of access to appellants' property remains unimpaired and unrestricted.

The question whether the denial of access to new U. S. Highway 20 constitutes the taking of a right to which appellants are entitled to compensation is also resolved against appellants. The statute authorizes appellee to construct highways without the right of direct access thereto by abutting property owners. The petition in this case states that appellee is taking all abutters rights of access. The lower court declined to admit proof that such denial diminished the after taking value of appellants' remaining property.

The rule here and elsewhere is that where the landowner had no pre-existing right of access the mere fact that a limited access highway is constructed adjacent to or across his property either by totally new construction or by re-routing or relocating an existing highway will not be sufficient to create in the property owner a right of access which the State must then condemn. Appellant cannot claim damages for the claimed taking of a right that never existed. 43 A.L.R. 2d 1079; Lehman v. Iowa State Highway Commission, 99 N.W. 2d 404; Harreld v. Mississippi State Highway Commission, 234 Miss. 1, 103 So. 2d 852.

The question may be asked why it is necessary for the Mississippi State Highway Commission to state in

the condemnation petition that it is taking all abutters' rights of access if the right so taken does not have compensable value to the landowner. Before the enactment of recent legislation a landowner acquired a special right of direct access to a new highway upon its construction when it abutted on his land. Chapter 314, Laws of 1956, authorizes Mississippi State Highway Commission to plan, designate, and establish controlled or limited access facilities. In condemning land for a new facility it is necessary that the petition appropriately state that access is to be denied, if it is to be such a facility. Whatever words the petition employs it is not descriptive of a right being taken, but under the statute is a designation of the kind of facility to be established. It is also necessary that the petition and other proceeding show whether access to the new facility is to be denied or controlled because the construction of a limited access facility may impose a peculiar burden upon the land across which it is constructed and thereby affect the question of damages. For instance, where a new highway is constructed across a plantation so as to sever it in two parts, the severance damage is greater if the owner is unable to cross the highway from one part of his land to another, thus diminishing the after taking market value. The additional damage results, however, not because the owner is denied access to the highway as such, but because of the increased consequential damage from severance.

▮▮ Appellants assign as error the action of the trial court in admitting the testimony of appellee's witness on damages over appellants' objection that the witness did not follow the before and after rule. As already stated, these witnesses testified that the land of appellants lying south of the proposed new U. S. Highway 20 and north of present U. S. Highway 80, and on which are the valuable improvements, would not be damaged by the taking; that the sole damage appellants would suffer would be the fair market value of the land taken,

plus the fair market value of the 1.4 acres severed and for which full value was allowed, plus the value of a fence. These witnesses did not appraise the fair market value of the remaining land which they stated was not damaged.

 ■ In our opinion this was not error under the circumstances of the case.

Ordinarily, the proper method for a witness to arrive at the damages in eminent domain proceedings is to give his estimate of the fair market value of all the land before the taking and the fair market value of the land remaining after the taking, the damages being the difference between these two figures. But this is not always necessary. We said in Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565, that:

"There are exceptional cases to which this before and after rule is not applicable. Richardson v. Board of Levee Commissioners, 68 Miss. 539, 9 So. 351. For example the taking of a few, and the damaging of a few more, acres of a large plantation might not decrease the market value of the plantation, nevertheless, its owner would have lost the value of the land taken and suffered the damage inflicted on a part of the plantation remaining. Whether the rule is applicable in a particular case depends on its facts. . . ."

Actually, there was no departure in the present case from the before and after rule as a measure of damage. The jury was properly instructed according to the before and after rule. What the trial court did in reference to the testimony of appellee's witnesses was to permit a variation in the method of proving the difference in the before and after value. The witnesses were entitled to their opinion that the land remaining which was south of the new facility was not damaged by the taking. The jury had a right to believe these witnesses. There was no proof to the contrary except that tendered by ap-

pellants based on relocation of the highway, denial of access to the new facility, and diversion of traffic. This part of appellants' land constituted the greater part of the value of the whole before the taking. This being the case the before and after value of the land south of the new facility would be the same. Consequently, the failure to appraise that part had no effect on the resulting damages. We cannot understand how appellants could possibly have been harmed by admitting the testimony of appellee's witnesses. Under the particular facts of this case, we are of the opinion no error was committed in respect to this method of proving damages. The witnesses would have arrived at the same damages either way.

The three remaining assignments of error are all grounded on the fundamental question raised in the first assignment of error and are therefore not well taken. Any discussion on the remaining assignments would be repetition.

Affirmed.

*McGehee, C.J.,* and *Kyle, Ethridge* and *Jones, JJ.,* concur.