210 So.2d 661 (1968)
MISSISSIPPI STATE HIGHWAY COMMISSION
v.
T.C. NULL et al.
No. 44857.
Supreme Court of Mississippi.
May 20, 1968.
Rehearing Denied June 10, 1968.
*662 Dunn & Singley, Meridian, for appellant.
Gerald Adams, Snow, Covington, Temple & Watts, Meridian, Watkins, Pyle, Edwards & Ludlam, Robert H. Weaver, Jackson, for appellees.
SMITH, Justice.
Mississippi State Highway Commission has appealed from a judgment of the Circuit Court of Lauderdale County entered pursuant to a jury verdict returned in an eminent domain proceeding awarding compensation *663 and damages to appellees, T.C. Null and Jim Walter Corporation. Null was awarded $4,500 and Jim Walter Corporation $500. There is no cross-appeal.
Null was the owner, and Jim Walter Corporation, the lessee, of 5.41 acres of commercial property abutting on Tom Bailey Drive and located in a commercial district in the City of Meridian. Two expert appraisers who testified for the commission valued the tract at $133,131 and $130,000, respectively. It was established that the property was suitable for a number of commercial uses, including that of a motel site.
The property condemned consists of an easement for highway purposes twelve feet wide and extending all the way across the 175 foot frontage of the property as it abuts the highway, containing .0482 of an acre. This strip is to be used for construction of a "frontage" or service road paralleling and servicing the present highway which will run between the Null property and the highway. As stated by appellant:
The construction for which this condemnation proceeding was instituted was the building of the outer lanes or frontage roads of Tom Bailey Drive and the 12 feet being condemned here will be used for the embankment of this outer lane or frontage road. Of this 12 feet, the fill or embankment will occupy only from 4 to 6 feet and the remainder of the 12 feet will remain just as it is and the Commission will make no further use of it.
The easement is described as "temporary" to expire upon completion of the project, not later than 1971. After construction is completed, however, access to the highway from the Null property, and to the Null property from the highway, will be only from the frontage road and at points designated by the commission.
When Tom Bailey Drive was constructed and its right-of-way acquired, it was a conventional highway in the sense that owners of adjacent or abutting lands had and enjoyed the right of free and direct access to it. Hamilton v. Mississippi State Highway Comm'n, 240 Miss. 895, 128 So.2d 742 (1961). The right-of-way had been acquired from Null's predecessor in title by conveyance. Mississippi State Highway Comm'n v. Spencer, 233 Miss. 155, 101 So.2d 499 (1958); Whitworth v. Mississippi State Highway Comm'n, 203 Miss. 94, 33 So.2d 612 (1948).
In the case here, Null had not actually constructed a driveway from his property directly to the highway, but habitually used the driveway of an adjoining property, in which he was said to own an interest.
When the present proceedings were begun, Tom Bailey Drive was a four-lane highway running generally east and west, with the north lanes separated from the south lanes by a median or neutral strip.
After the verdict was returned, appellant moved for a new trial upon two grounds, first, that it was against the overwhelming weight of the evidence, and second, it was so excessive as to evince passion and prejudice on the part of the jury.
Counsel for appellant, in an able brief, now argue here with great earnestness that the verdicts are grossly excessive as the result of prejudicial errors committed in the trial, and because of which, it is contended, the case should be remanded to be heard by another jury.
Aside from matters of prejudice, assigned as error, the fundamental or basic issue presented by the appeal relates to the right of appellees to be compensated for loss or damage of the right of free and direct access to the highway. A resolution of that issue, we believe, will make it unnecessary to deal with the other questions in detail.
Since the right of appellees to recover compensation and damages is, of course, unquestionable under the Mississippi Constitution, this case differs from the usual civil case in that there is no issue as to liability and errors must be considered only as they relate to the amounts awarded. Some of the matters argued, and which we do not *664 reach, otherwise would present more serious questions.
However, most of the difficulty seems to have arisen as a result of the fact that the case was tried in the court below upon two widely divergent theories. It was the position of appellant throughout the trial that appellees were not entitled to recover anything for damages to result from loss or impairment of the right of direct access. Appellees took the opposite view and this difference in the theories held by the adversaries gave rise to most of the questions presented by the appeal.
Appellant's contentions upon the basic issue may be categorized as follows:
(1) Since there was in existence no actual driveway from the Null property to the highway, the taking of the strip and proposed construction would not deprive him of anything in the way of access for which he was entitled to compensation. It is argued that the destruction or impairment of his right of direct access (since it had not been and was not being actually used) was neither compensable as such nor an element of recoverable damages because of a reduction in value of the remainder of the tract.
(2) An order of the commission adopted July 11, 1950, had declared Tom Bailey Drive a "limited access" highway, thus setting in motion, it is argued, the running of a prescriptive period against Null's right of direct access and, as this had continued for some sixteen years, he was now barred of his right by prescription.
As to the first contention, the fact that the right of direct access was not then in actual use nor evidenced by an existing driveway or entry road in nowise operated to deprive Null of the right. It was an incident of his ownership of the land to be exercised at his will and election.
The second contention is based upon the above order adopted by the commission on July 11, 1950, which declared that Tom Bailey Drive "* * * be designated as a limited access highway in the manner and to the extent shown on the plat attached to said report."
The plat referred to indicated service drives or "frontage roads" along and paralleling the present highway.
This order was adopted pursuant to Mississippi Code 1942 Annotated section 8038 (h) (Supp. 1966), which provides:
To provide for boulevard stops, restricted entrances to main highways and access driveways, neutral grounds and roadside parks, and to erect all suitable direction and warning signs, and to provide access roads in or to municipalities where necessary; to provide limited access facilities when and where deemed necessary, such a facility being defined as a highway or street especially designed or designated for through traffic and over, from or to which owners or occupants of abutting land or other persons have only such limited right or easement of access as may be prescribed by the State Highway Commission and to provide that certain highways or streets may be parkways from which trucks, busses and other commercial vehicles shall be excluded or may be freeways open to customary forms of highway and street traffic and use and such limited access facilities or parkways may be planned, designated, established, regulated, vacated, altered, improved, constructed and maintained and rights-of-way therefor specifically obtained, either by purchase, gift, condemnation or other form of acquisition.
When the right-of-way for the highway had been acquired, originally by conveyance, there was no statutory authority for limited or controlled access highways. A notice of the adoption of the commission's order was published in the Meridian Star, a newspaper circulated in Lauderdale County, and "limited access highway" markers were erected at various places, one of which was across the highway from the Null tract. But nothing further was done to implement the order, *665 and with respect to Null and his predecessors in title to this property, the order amounted neither to an entry, a trespass nor an ouster by the commission, nor was it effective as a taking of the right of direct access to Tom Bailey Drive.
This Court had held in at least two cases that the right of access by an abutting owner to a public highway is a valuable right of property and that the Mississippi Constitution proscribes its taking without just compensation. Mississippi State Highway Comm'n v. Finch, 237 Miss. 314, 114 So.2d 673 (1959); Carney v. Mississippi State Highway Comm'n, 233 Miss. 598, 103 So.2d 413 (1958).
The adoption of a declaratory order by the commission, wherein Tom Bailey Drive was designated as a limited access highway, did not amount to a taking of Null's property right of direct and free access nor did it obviate the constitutional necessity of paying just compensation and damages when and if it actually should be taken or damaged.
As said in Finch, supra, "The manifest purpose of the Commission in condemning the land in question was to convert the existing highway into a controlled-access facility." The Court then quoted from section 3 chapter 314, Mississippi Laws 1956, which provides, in part:
Provided, however, no existing public street or highway shall be converted into a controlled-access facility except with the consent of the owners of lands abutting said freeway or with the purchase or condemnation of the access rights of said abutting land owners.
The latter provision appears to have been inserted to comply with the mandatory requirements of Mississippi Constitution article 3, section 17 (1890).
The conclusion is inescapable that the construction of the paralleling frontage road will substantially impair or damage Null's right of access and will effectively destroy his right of direct and free access as it had previously existed. He was entitled to be compensated for this as well as for the .0482 of an acre of land embraced within the easement. This was valuable commercial property. Despite description of the easement as "temporary" we think construction of the frontage road upon "4 to 6" feet of it will amount to an effective appropriation of the property to public use. Expert witnesses for the commission itself placed a top value upon the 5.41 acres of $133,131 or $24,608.31 per acre. Nevertheless, these same appraisers sought to limit Null's compensation and damages to $800 and $825, respectively. They frankly stated that they allowed nothing at all in the way of damages for the taking or damaging of his right of direct access. One of these witnesses stated that Null would not be deprived of access at any time. The other said he did not consider that there would be any damage from loss of access and that he had made his valuation upon an assumption that access could be obtained and that, moreover, there was "no present access." However, the undisputed evidence in the record, oral and documentary (the latter including plans and specifications of the proposed construction), demonstrates that the commission's witnesses were in error as to this and based their conclusions upon a false premise when they assumed there would be no loss or impairment of the right of direct access. Undeniably there will be, both from the property to the highway and from the highway to the property.
Obviously, upon the basis of the per acre value placed upon the 5.41 acre tract by the commission's witness, the .0482 of an acre embraced within the 12 x 175 foot easement (even assuming the abutting portion no more valuable than that farther back from the highway) was worth $1,186.12. Subtracting this from the $4,500 awarded Null by the jury leaves only $3,314 for all damages sustained by reason of loss or damage of the right of direct access.
On the other hand, three expert witnesses for Null appraised the .0482 of an acre at *666 $1,312.80, $2,000 and $750, respectively. However, they fixed the damages to the remainder of the tract which will result from loss of direct access at $30,587.50, $40,500 and $44,000. These are the only figures in evidence upon that subject.
The record discloses that, upon motion of appellant, the jury viewed the premises. We think that it is so obvious as hardly to require comment that the jury, rather than having been misled or inflamed by this evidence and the criticized circumstances of the trial, rejected the testimony given as to damages for loss of direct access and arrived at their own figure upon the other evidence in the record and after viewing the situation. Appellant offered no evidence which took into consideration this element of damages. Moreover, we think there was evidence which would have justified the inclusion of some amount as damages for construction of a concrete ramp partially across the front of this property. But valuing the .0482 of an acre taken at $1,186.12 (upon the basis of the figure given by the commission's own witness), it will be seen that only $3,314 was awarded for damages of any kind, including damages resulting from the loss or impairment of the right of direct access. In so doing, the jury discounted the testimony of appellees' witnesses as to the latter some ninety percent.
As a sale promotion device, Jim Walter Corporation was exhibiting one of its "sample" shell homes upon the property under a lease for which it was paying Null $200 per month. The lease provided that lessee should have the right to remove the house upon its termination and contained an option of renewal. The lease, of course, was valueless to the lessee unless the house could be kept readily accessible for inspection by the public. The jury was warranted in concluding that the taking of the easement and the proposed construction of the service road across the front of the property would substantially diminish the value of the lease to Jim Walter Corporation for these purposes. The evidence as to the amount of this loss was not entirely satisfactory, but even if recovery is limited to the inevitable cost of removing the house, and any loss of prospective sales is excluded, the $500 awarded Jim Walter Corporation, lessee, while perhaps high, is not so excessive as to require a reversal.
It is manifest that errors were committed in the trial of the case which it would have been necessary to consider fatal but for the fact that obviously no prejudice resulted therefrom. We have concluded upon the whole record that the verdict clearly was reasonable in amount.
For the reasons stated, since the matters assigned and argued as having been errors which prejudiced the jury are not reflected in the amounts awarded appellees, the verdict and judgment should be affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, BRADY and PATTERSON, JJ., concur.