509 So.2d 856 (1987)
STATE HIGHWAY COMMISSION OF MISSISSIPPI
v.
McDONALD'S CORPORATION, et al.
No. 55635.
Supreme Court of Mississippi.
April 8, 1987.
Rehearing Denied July 29, 1987.
*857 Edwin Lloyd Pittman, Atty. Gen. by P.O. Gibson, Jr., Asst. Atty. Gen., John H. Price, Jr., Susan L. Runnels, Thomas, Price, Alston, Jones, & Davis, Jackson, for appellant.
Robert H. Weaver, James L. Jones, Shane F. Langston, Watkins, Ludlam & Stennis, Stephen W. Rimmer, Stephen E. Gardner, Young, Scanlon & Sessums, Jackson, for appellees.
En Banc.
HAWKINS, Presiding Justice, for the Court:
The State Highway Commission of Mississippi (Highway Department) has appealed a judgment rendered by a special court of eminent domain of the First Judicial District of Hinds County in favor of McDonald's Corporation, a Delaware corporation (McDonald's), and Robinson Industries, Inc., a Mississippi corporation (Robinson), fixing compensation for their property taken at $500,000, with $225,000 allocated to McDonald's and $275,000 allocated to Robinson.
Because the trial of this cause was premised on the assumption that these parties had an easement giving them access to a frontage road of Interstate Highway 55, when all the landowner McDonald's had was a revocable permit, we notice plain error under our Rule 6(b), and affirm an award of $1,000 if McDonald's and Robinson enter a remittitur of $499,000 of said judgment; otherwise we remand for a new trial with proceedings consistent with this opinion.

FACTS
In 1976 Franchise Realty Interstate Corporation, with principal offices in Oakbrook, Illinois, was a subsidiary of McDonald's Corporation, a Delaware corporation operating nationwide in the fast food restaurant business.
Kenneth Mack Robinson, a resident of Jackson, was interested at the time in owning and operating a franchise McDonald's restaurant on the west side of the frontage road off Interstate Highway 55 (I-55). In October, 1976, when investigating the purchase of a lot on which the restaurant could be located, Robinson learned the Mississippi Highway Department (Highway Department) contemplated a reconstruction project of I-55 and the frontage road, and that such project would terminate any access to the frontage road at the proposed location.
Robinson first learned that the project was being planned through a telephone conversation with Les Johnson, a Highway Department official. Johnson mentioned several points to Robinson, including the location of the new access. As a result of this conversation, Robinson jotted down notes dated October 18, 1976, pertaining to what he had learned. A copy of these notes, in pertinent part, reveal the following:
* * * * * *
(2) No access beyond K-Mart to the West ... Steak `N' Ale  Us  Texaco
* * * * * *
(4) Entrance to I-55 South will be in front of K-Mart
(5) 1/2 interchange at Briarwood
Robinson testified that "us" meant McDonald's.
Shortly thereafter, Robinson orally told Don Pope, the real estate representative of *858 McDonald's Corporation (Franchise Realty) that there was a proposed non-accessing on the East side of the lot. Robinson testified that at the time he communicated with Don Pope, he was satisfied that there were some plans in the making. It is therefore clear that all parties knew in October, 1976, that the property involved in this suit (between McDonald's property and the frontage road) had been proposed for non-accessing by the Highway Department.
On December 2, 1976, Franchise Realty made an application on a Highway Department form for a permit to construct a driveway to connect with the frontage road on the East side of the lot. Pertinent parts of the application read:
MISSISSIPPI STATE HIGHWAY DEPARTMENT
APPLICATION FOR PERMIT TO CONSTRUCT DRIVEWAY WITH CONNECTION TO STATE HIGHWAY AND AGREEMENT OF APPLICANT GIVEN IN CONSIDERATION OF SUCH PERMIT
Franchise Realty Interstate Corp. of Oakbrook, Illinois 60521 hereinafter called applicant, who at the present time proposes to construct a drive way connecting their [sic] property with Highway No. I-55 Fr Rd between Briarwood and Northside Drive in Hinds County, Mississippi, does hereby make application to the State Highway Department of Mississippi for permission to construct the said driveway mentioned above and shown herein below and in consideration of a permit being granted to me for such construction, do hereby agree to construct such facility in accordance with the plan shown herein below and do also further agree, with full understanding of the terms thereof, to all of the following:
(a) That the Mississippi Highway Department does not purport to grant to said applicant any right, title, claim or easement in or upon said highway or right of way appurtenant thereto.
(b) That the said State Highway Department may at any time require and compel the removal or reconstruction of said driveway or other facility therein described or referred to, as and when said State Highway Department deems it necessary. All expense of said removal or reconstruction is to be borne exclusively by the applicant and the State Highway Department is to be in no way liable.

(c) Said applicant hereby expressly agrees for himself, heirs, assigns and legal representatives, that upon request of said State Highway Department, he will without delay either reconstruct, remove or move to another location the facility herein described all in accordance with the terms of the request so made by the said State Highway Department. It being distinctly understood that any other location for said facility or driveway shall be primarily the choice of said State Highway Department, but said new location will be made or designated by said State Highway Department after agreement with said applicant or his successors, if possible. It is understood and agreed that the State Highway Department, if this permit is granted and acted upon by the said applicant, will use all reasonable efforts to avoid the necessity of requesting that the herein mentioned facility be removed, altered or reconstructed. [Emphasis added]
On December 6, 1976, the Highway Department approved the application and issued a permit to Franchise Realty. The approved permit stated:
This permit is issued for stage construction which allows for building of the permit as specified ...
There was also stamped on the approval the following statement:
NOTE: SINCE THIS PROJECT IS SCHEDULED FOR RECONSTRUCTION THE EXISTING ROADWAY AND R.O.W. ARE SUBJECT TO CHANGE.
*859 Taking Robinson's prior knowledge into account, it is readily apparent that he was cognizant that the "change" would be removal of any access to frontage road.
On December 17, 1976, Franchise Realty purchased the property from Theo P. Costas, et al. The lot has a frontage of 150 feet North and South on the frontage road, and is approximately 218 feet deep East and West, and in addition has a strip of land 50 feet wide North and South, and 172 feet long East and West on its West side which connects with a 50-foot wide private driveway West of the lot, on which Franchise Realty obtained a perpetual non-exclusive easement, furnishing vehicular access to the property from the West.
Interstate Highway 55 is a controlled access highway. As in other states, this State has special statutes dealing with controlled access highways and appertaining frontage, or service roads.
Miss. Code Ann. § 65-5-7 (1972) provides in pertinent part:
§ 65-5-7. Design.
The highway authorities of the state, ... are authorized to so design any controlled-access facility and to so regulate, restrict, or prohibit access as to best serve the traffic for which such facility is intended... . No person shall have any right of ingress or egress to, from, or across controlled-access facilities to or from abutting lands except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time. [Emphasis added]
Miss. Code Ann. § 65-5-17 (1972) deals with local service roads, and states in pertinent part:
§ 65-5-17. Local service roads.
In connection with the development of any controlled-access facility, the state, ... highway authorities are authorized to plan, designate, establish, use, regulate, alter, improve, maintain, and vacate local service roads and streets ... and to exercise jurisdiction over service roads in the same manner as is authorized over controlled-access facilities under the terms of this chapter if, in their opinion, such local service roads and streets are necessary or desirable. [Emphasis added]
On April 8, 1977, Franchise Realty and Robinson and wife Betty S. Robinson entered into a 20-year lease. This lease contains no provision to release the lessees in event of condemnation proceedings, or for rent abatement in such event. On the same date McDonald's Systems, Inc., another McDonald's subsidiary, entered into a licensing agreement with the Robinsons to operate a McDonald's restaurant on the lot. Thereafter, Robinson formed Robinson Industries, Inc., a corporation in which he was the sole shareholder, and on April 25, 1977, he and his wife assigned their lease and license to the corporation. At some later date Franchise Realty merged into its parent, McDonald's Corporation.
Thus, when eminent domain proceedings were instituted by the Highway Department on September 22, 1982, the parties in interest to this realty were McDonald's Corporation and Robinson Industries, Inc.
The land actually being taken in the proceedings was minimal. The State was permanently taking a triangular-shaped parcel 3.2 feet wide at its base with a hypotenuse 47.4 feet long, totalling 75.65 square feet. Also, the State was acquiring a ten-year construction easement on an adjacent strip just West, triangular in shape, 5 feet wide at its base, with a hypotenuse 58 feet long. The total triangular shaped parcels are 8.2 feet at the base, with a hypotenuse 58 feet long, and 47.2 feet along the highway, with a total square footage of 194.19 square feet. Both Robinson's Industries, Inc., and McDonald's Corporation put the value of the land taken at $1,000. The Highway Department valued it at $500. Neither party contended that taking of this land in fee or for easement purposes damaged the remainder.
The controversy in this case arose over the value of the loss of access to the frontage road.
Upon the motion of Robinson Industries and McDonald's, the trial court excluded all evidence pertaining to actual knowledge by *860 them before the property was purchased that there would be a reconstruction resulting in loss of access to the frontage road. Although the permit was admitted into evidence, no questioning about Robinson's knowledge was allowed.
The Highway Department did make a profert of proof through Robinson of this prior knowledge.
Also, over objection of the Highway Department, the court gave the following instruction on behalf of the property owners:
INSTRUCTION DI-2
The Court instructs the jury that the right of access by an abutting property owner to a public highway, road, or street is a valuable property right and the Mississippi Constitution prohibits the taking or the elimination of such access without just compensation and damages being paid to the property owner.
McDonald's and Robinson claimed $5,001,000 damages, for which $5,000,000 was loss of the access.
The jury returned a verdict of $500,000 of which $225,000 was allocated to McDonald's and $275,000 to Robinson.
The eminent domain court thereupon entered a judgment based upon this verdict.

LAW

A.

RIGHT OF ACCESS TO CONTROLLED ACCESS HIGHWAY
In reviewing the 3rd and 5th Assignments of Error of the Highway Department, together with the record in this case, it became obvious to us that the appellees had a more serious legal question facing them than the problems suggested by these two assignments.[1] Accordingly, we called on each side to brief the following questions:
1. In view of Miss. Code Ann. §§ 65-5-7, 65-5-17 and the terms of the revocable driveway permit to a controlled access highway frontage road, did the landowner acquire any compensable right for loss of access acquired by this permit?
2. If the answer to the above question is in the negative, has the State Highway Department waived its right to claim any less damages than the amount set forth by the Highway Department in its original statement of values ($219,500)?
Counsel for all parties have filed thorough briefs, which we have studied, together with all authorities cited. We have concluded Franchise Realty (McDonald's) only acquired a revocable permit giving it access to the frontage road, and McDonald's had actual knowledge from the Highway Department that it was subject to change. Yet, these parties were compensated by an eminent domain court the same as if McDonald's owned an easement giving it access to the frontage road.
We notice this as plain error, and we notice it under our Rule 6(b) providing that this Court, "may, at its option, notice a plain error not assigned or distinctly specified."
We add in fairness to counsel for the Highway Department, however, that it was the review of the above-mentioned assignments of error, which are clearly meritorious, which made it clear that McDonald's and Robinson were paid for something neither ever owned. Indeed, in no way could this Court have adequately addressed these two assignments of error without coming face to face with this manifest error.
We hold, as we must, that neither McDonald's nor Robinson was entitled to any compensation for making the property non-accessible to the frontage road, it being no more than a revocation of a revocable permit.
*861 On an ordinary street, public road or minor highway an abutting landowner has a right of access by law, and this is a property right which cannot be denied him without compensation. It may be subject to some reasonable control, but the abutting owner's free and convenient access to his property has always been a fully compensable right. Mississippi State Highway Commission v. Null, 210 So.2d 661 (Miss. 1968); Mississippi State Highway Commission v. Irby, 190 So.2d 455 (Miss. 1966); Muse v. Mississippi State Highway Commission, 233 Miss. 694, 103 So.2d 839 (1958). See also, cases annotated under 39 C.J.S. Highways, § 141(2)a.
This is not the case with a controlled access highway or frontage road to such highway, as may be discerned from Miss. Code Ann. §§ 65-5-7, -17. There is no right of access to such a thoroughfare, except that specifically granted by the Highway Department.
The Supreme Court of Nebraska summarized this distinction in Morehead v. State Department of Roads, 195 Neb. 31, 236 N.W.2d 623, 626 (1975):
The right of access to existing highways may not be taken without compensation. This is because the right of direct access to an existing street or highway is a property right of which an abutting owner cannot be deprived without due process of law and compensation for his loss. [Citations omitted]
There is no right of direct access, however, to a highway constructed upon a new right-of-way where no highway previously existed if the new highway was designated as a controlled access facility from the beginning. No right of direct access ever accrues to such a highway. An abutting landowner has no right to compensation for denial of access to the new highway because the right never existed.
This Court echoed that language in Morris v. Mississippi State Highway Commission, 129 So.2d 367 (Miss. 1961):
The rule here and elsewhere is that where the landowner has no pre-existing right of access the mere fact that a limited access highway is constructed adjacent to or across his property either by totally new construction or by re-routing or relocating an existing highway will not be sufficient to create in the property owner a right of access which the State must then condemn. Appellant cannot claim damages for the claimed taking of a right that never existed.
129 So.2d at 370. See also: Moore v. State Highway Commission, 191 Kan. 624, 383 P.2d 549 (1963); Riddle v. State Highway Commission, 184 Kan. 603, 339 P.2d 301 (1959); State v. Fonburg, 80 Idaho 269, 328 P.2d 60 (1958).
This brings us to the situation of McDonald's in December, 1976. The property had no right of access to the frontage road reserved to it by its owner when the land was conveyed to the State for highway purposes. Nor did McDonald's have any statutory right of access.
Its access to the frontage road depended solely upon the right given it by the Highway Department. Its right of access can rise no higher than the permit granted it by the Highway Department, a permit the Highway Department was free to give or deny, and which it gave with no charge to McDonald's.
We are dealing with what, if anything, the Highway Department should have to pay for revocation of a permit, plus modest damages for taking a sliver of land. This and nothing more.
In City of Winston-Salem v. Robertson, 81 N.C. App. 673, 344 S.E.2d 838, 839 (1986), the North Carolina Court of Appeals stated:
... [T]he granting of a driveway permit by the State Highway Commission did not vest an irrevocable property right in plaintiff-landowners which could not thereafter be taken without compensation. [Citations omitted]
* * * * * *
... [T]he granting of an application for a driveway permit is not a contract. It is a regulatory action taken by the State for safety purposes and cannot be compared with a right-of-way agreement *862 in which the property owner reserve access at a particular point.
In State v. Mauney, 76 N.M. 36, 411 P.2d 1009, 1914 (1966), the Supreme Court of New Mexico held:
Even if we were to assume that the permit was revoked, or revoked in part, the law affords no relief in favor of the landowners. It is clear that a permit is a license, and the words are often used synonymously. Such license may be revoked in the exercise of police power of the state, whether or not the power of revocation is reversed, and even though the licensee has expended money in reliance on the permit. [Citations omitted]
Therefore, it is clear that a revocable license does not constitute property for which compensation is due upon taking. See, e.g., United States v. Fuller, 409 U.S. 488, 491-92, 93 S.Ct. 801, 803-04, 35 L.Ed.2d 16 (1973); Acton v. United States, 401 F.2d 896, 899 (9th Cir.1968). See also: Treat v. State, 117 N.H. 6, 369 A.2d 214 (1977); Haymore v. Highway Commission, 14 N.C. App. 691, 189 S.E.2d 611 (1972).
Should the State of Mississippi have to pay $500,000 for the termination of a revocable permit, which the Highway Department was under no legal duty to issue, and for which it was paid nothing?
This question answers itself.
Appellees cite cases to the effect that a landowner who is apprised by some public authority his land may be subject to condemnation is not thereby deprived of claiming compensation for improvements made after receipt of this information. These cases are clearly inapposite.
It is one thing when a man builds an improvement on a piece of land which he knows may be subject to condemnation. As observed in Showalter v. State, 48 Ariz. 523, 63 P.2d 189 (1936), public authority plans may be abandoned. Either side may change its mind. See also Highway Development Co. v. Miss. State Highway Commission, 343 So.2d 477 (Miss. 1977); Pearl River Valley Water Supply Dist. v. Wood, 252 Miss 580, 172 So.2d 196 (1965); 2 Nichols, § 13.14 (3rd Ed. 1962); 98 A.L.R.3d 584, Eminent Domain, Recovery of Value of Improvements Made With Knowledge of Impending Condemnation.
It is something entirely different when that same man asks permission for access to a frontage road of a major interstate highway as to which he has no property right of access, and is specifically told the permit granted is subject to change, and the permit so provides in express language. This is precisely what happened in this case.
To deny the Highway Department the right given it by statute on a major interstate service road such as this to issue revocable or limited permits, subject to change, would make the taxpayers the subsidizers of every business thereon dependent on the right of access to the public road for its existence. This prospect has nightmarish implications.

B.

JURY INSTRUCTION
Having concluded that McDonald's had no pre-existing right of access, it follows that McDonald's should not have been compensated for a right that never existed. See Morris v. Mississippi State Highway Commission, supra; Morehead v. State Dept. of Roads, supra; City of Winston-Salem v. Robertson, supra.
Instruction DI-2 embraces an element of damage when a property owner has a reserved right to access to a highway, or the statutory right abutting property owners have to an ordinary street or public road. This instruction assumed McDonald's had some perpetual easement giving it access to the frontage road aside from the permit. Indeed, this is precisely how the trial court reasoned when he granted this instruction, and for the record cited Mississippi State Highway Commission v. Null, supra, which involved an easement and is distinguishable from this case.
As above set forth, we have concluded that the action taken by the State Highway Commission pursuant to Miss. Code Ann. § 65-5-17 (1972) in revoking the driveway permit given to McDonald's was a proper *863 and reasonable exercise of the Commission's police power. See, e.g., Harreld v. Mississippi State Highway Commission, 234 Miss. 1, 103 So.2d 852 (1958). The instruction was erroneous.

C.

HAS THE HIGHWAY DEPARTMENT WAIVED ITS RIGHT TO CLAIM LESS DAMAGE THAN $219,500?
Prior to the condemnation hearing, the Highway Department filed in the eminent domain court a statement of values of the property being condemned, showing the total compensation being due as $219,500.
At trial two appraisers testified for the Highway Department, Melvin Chaney and Bobby L. Cloud. Chaney testified McDonald's was entitled to just compensation of $219,500 and Robinson as lessee was not entitled to any sum. Cloud, on the other hand, testified just compensation for this taking was $235,500, of which McDonald's was entitled to $172,440 and Robinson $63,060.
As we noted above, this Court has noticed as plain error that McDonald's never had anything more than a revocable permit giving this business access to the frontage road. Of course, all rights of Robinson were as lessee of McDonald's.
By failing to assert this in trial proceedings and before us, has the Highway Department waived its right to claim anything less than $219,500 in the compensation?
By statute, Miss. Code Ann. § 11-27-7, the statement of values filed by the Highway Department is a pleading:
The statements required by this section shall constitute the pleadings of the parties with respect to the issue of value, and shall be treated as pleadings are treated in civil causes in the circuit court.
Upon reversal of this case, the trial court has authority to permit the Highway Department to amend its pleadings, Seals v. St. Regis Paper Co., 236 So.2d 388 (Miss. 1970); Armstrong v. Jones, 198 Miss. 627, 22 So.2d 7 (1945); Haines v. Haines, 98 Miss. 830, 54 So. 433 (1910); and the case proceed to trial de novo, Miller v. Watson, 467 So.2d 672 (Miss. 1985), and with this decision as the law of the case. State Highway Commission v. Coahoma County, 203 Miss. 629, 37 So.2d 287 (1948); Fair v. Federal Land Bank, 165 Miss. 513, 146 So. 303 (1933).
Moreover, even though a party may in fact have waived its right to assert error, this Court has the inherent power to notice it to prevent a manifest miscarriage of justice. Johnson v. State, 452 So.2d 850, 853 (Miss. 1984).
In the event that McDonald's and Robinson elect to have another trial, as we set out infra, the Highway Department will be permitted to assert on retrial that just compensation is less than $219,500 by appropriate amendment and proof at trial proceedings.

D.

DAMAGES
It was never contended by the appraisers or any of the parties that the Highway Department's taking of the strip of land caused any damage to the remainder. All damage claimed to the remainder of the property resulted from the loss of access to the frontage road. Therefore, if the appellees elect for another trial, upon remand the sole issue for trial is the actual value of the property being taken in fee and by easement, without resort to a "before-and-after" taking valuation of the remainder. See: Green Acres Memorial Park v. Mississippi State Highway Commission, 246 Miss. 855, 153 So.2d 286, 289 (1963); Morris v. State Highway Commission, 240 Miss. 783, 129 So.2d 367, 370 (1961).
McDonald's and Robinson placed the fair market value of the land being taken in fee and by easement at $1,000, the Highway Department at $500.
Because the major issue in this case is being decided by this opinion, there is no need to require another trial of this case unless McDonald's and Robinson elect to do so.
*864 Under provisions of Miss. Code Ann. § 11-1-55, we find that a remittitur of $499,000 by the appellees is appropriate.
Therefore, if McDonald's and Robinson enter a remittitur of $499,000 within fifteen days of this decision, judgment in the amount of $1,000 will be affirmed; otherwise, the judgment of the eminent domain court will be reversed and the case remanded for proceedings consistent with this opinion.[2]
Regarding McDonald's cross-appeal, we find no error by the lower court in refusing to grant a jury instruction that would award legal expenses to McDonald's.
AFFIRMED UPON THE FILING OF A REMITTITUR; OTHERWISE, REVERSED AND REMANDED; AFFIRMED AS TO CROSS-APPEAL.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] The 3rd Assignment complained of the trial court's excluding from the jury testimony of prior knowledge by McDonald's and Robinson that the property was to be "non-accessed," (proof of which was developed outside the presence of the jury), and the 5th Assignment complained of the granting of instruction DI-1, which informed the jury that the right of access of the defendants was a valuable property right.
[2] It was the opinion of all four appraisers in this case that the loss of access to the frontage road would mean the location could not thereafter support a McDonald's cafe. We certainly agree that loss of access to the frontage is a financial blow to this business. Yet we doubt if the corporate heads of McDonald's would agree with the surmise that their company merchandises a product so inferior that a prospective customer would be unwilling to undergo a fifteen-second delay in getting on the premises.