## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00624-SCT

*MISSISSIPPI TRANSPORTATION COMMISSION*

*v.*

*EARLIE STANCEL FIRES, AND WIFE, KATHLEEN
DIANE FIRES*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/95 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANT: | TIM WAYCASTER |
| ATTORNEY FOR APPELLEES: | SEAN ATKINS |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 5/8/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/29/97 |

### BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.

### McRAE, JUSTICE, FOR THE COURT:

¶1. This is an appeal of an eminent domain case in the Special Court of Eminent Domain of Tippah County, Mississippi. The subject property was condemned by the Mississippi Transportation Commission, pursuant to the statutory "quick take" procedure, and the only issue at trial was the determination of the amount of just compensation to be paid to the landowners, Earlie Stancel Fires and Kathleen Diane Fires, for the taking of the property. On appeal, the Commission argues that the trial court erred in allowing a departure from the before and after rule, in allowing testimony regarding a highest and best use other than the subject property's current use without the proper predicate, and in allowing testimony concerning sales of property not comparable to the subject property. We find no error in the proceedings below, and we will affirm the jury award of $57,620 to the appellees.

### I. BACKGROUND

¶2. This condemnation proceeding was instituted in the Special Court of Eminent Domain of Tippah

County, Mississippi by the Mississippi Transportation Commission on November 9, 1994. On January 24, 1995, the court appointed Bruce Dillingham, an independent appraiser, to value the property to be condemned. Dillingham valued just compensation at $41,844. The court issued the Order Granting the Petitioner (the Highway Commission) Right of Immediate Title and Possession on March 12, 1995. On March 23, 1995, the Mississippi Highway Commission, in accordance with Miss. Code Ann. 11-27-85, deposited $35,567.40 with the Circuit Clerk of Tippah County.

¶3. The property which the Commission sought to condemn was a 28.4 acre parcel along the north and south side of U.S. Highway 72 in an unincorporated area of Tippah County. The subject parcel was part of a larger tract consisting of 298.7 acres which belonged to the appellees, Earlie Stancel Fires, and his wife, Kathleen Diane Fires. At the time of the filing of the Commission's petition, the subject 28.4 acres was unimproved and consisted of timber land. One acre of the larger tract was used for residential purposes prior to the condemnation of the 28.4 acre parcel. This one acre contained a one-story frame residence and brick barn.

¶4. The distinction between the two parts of the tract is based on differences in the nature of the property's terrain. The property to be condemned consists of very flat land, while the remaining 270.3 acres is unlevel, with hills and ridges. The subject 28.4 acres of frontage along Highway 72 has access to utilities, it lies between residential areas, and the terrain is very flat. Both parties stipulated that the remaining 270.3 acres of land would not be damaged or affected by the condemnation proceedings. Both parties also stipulated that the remaining parcel had a highest and best use as agricultural or timber land.

¶5. At trial on May 9 and 10, 1995, both the Mississippi Transportation Commission and the landowners, the Fires, presented expert testimony from real estate appraisers regarding the amount of just compensation to which the Fires were entitled as a result of the taking of their property.

¶6. The Commission's appraisal expert, Melisande Stephens, determined that the highest and best use of the subject 28.4 acres was as agricultural and timber land and appraised it as such in its before-condemnation condition. In fact, Stephens made no distinction between the subject and remaining parcels of land, with regard to highest and best use. Using sales of comparable property, she assigned a value of $600 per acre to the subject parcel. Upon consideration of additional elements of value, Stephens arrived at a total before value for the entire 298.7 acres of $227,160. She valued the same property in its after-condemnation condition, considering the condemnation of the 28.4 acre parcel, damage to fencing, and temporary easements. Stephens arrived at an after-condemnation value of the property of $206,160. The difference in the before and after values was $21,000, and Stephens testified that $21,000 constituted just compensation for the condemnation of the Fires's 28.4-acre parcel.

¶7. The appraiser for the Fires, Johnny Coombs, appraised the 28.4 acres to be condemned. He did not issue a written appraisal for the entire 298.7 acres prior to the take or the 270.3 acres remaining after the take. He testified that the highest and best use of the 28.4 acres was as residential property and that the remaining 270.3 acres was agricultural or timberland, unaffected and undamaged by the take. Coombs also testified that the highest and best use of the property was as residential lots. His opinion as to the value of the land was based on comparable sales of residential property and his determination was $2,000 per acre, with just compensation for the taking of the Fires's property at

$57,620.

¶8. The jury went by bus to view the actual property being condemned, in addition to hearing from the appraisal experts. At the conclusion of the trial, the jury returned a verdict for the landowners that just compensation in this case was $57,620. Judgment was entered for the landowners on May 10, 1995, and on May 12, 1995, the Commission moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The court denied the motion, resulting in the present appeal.

## II. THE BEFORE AND AFTER RULE

¶9. The proper standard of review of questions of law is de novo. This Court must reverse for erroneous interpretations or applications of law. *Bank of Mississippi v. Hollingsworth*, 609 So. 2d 422, 424 (Miss. 1992). The first issue, whether the trial court erred in allowing a departure from the before and after rule, assumes that a departure from the rule took place. Nonetheless, the objection made by the defendants at trial was concerned with the introduction of evidence based on the alleged "departure" from the before and after rule. Therefore, this issue concerns an application of the proper legal standard for valuing property, a question of law.

¶10. Generally, the admission or exclusion of testimony based on relevancy is within the discretion of the trial judge, and this Court will reverse only if it finds that an abuse of discretion has occurred. *Terrain Enter. v. Mockbee*, 654 So. 2d 1122, 1128 (Miss. 1995). Where a court has exercised its discretionary authority in such a way that it misperceives the correct legal standard for admitting evidence, the deference customarily afforded trial courts in decisions concerning admissibility of evidence is precluded, because the error has become one of law. *Bean v. Broussard*, 587 So. 2d 908, 913 (Miss. 1991).

¶11. When a portion of a larger tract of land is taken for public use, the owner is entitled to be awarded the difference between the fair market value of the entire tract immediately before the taking and the fair market value of the remaining tract immediately after the taking. *Trustees of Wade Baptist Church v. Mississippi State Highway Comm'n*, 469 So. 2d 1241, 1244 (Miss. 1985); *Sanderson Farms, Inc. v. Mississippi State Highway Comm'n*, 324 So. 2d 243, 244 (Miss. 1975); *Mississippi State Highway Comm'n v. Hancock*, 309 So. 2d 867, 871 (Miss. 1975); *Mississippi State Highway Comm'n v. Hall*, 174 So. 2d 488, 492 (Miss. 1965); *Mississippi State Highway Comm'n v. Hillman*, 189 Miss. 850, 198 So. 565, 569 (1940).

¶12. However, there are exceptions to the "before and after" rule, which may apply in specific situations. These exceptions were first recognized in *Hillman*, 189 Miss. 850, 198 So. at 569-70. The *Hillman* court gave the example of the taking of a few acres of a large plantation, which may not decrease the market value of the plantation. Nevertheless, its owners would have lost the value of the land taken and would be entitled to compensation. *Id.* There, the before and after rule would not give them credit for the value of the property taken. *Id.*[1]

¶13. The other situation which warrants a departure from the before and after rule occurs when the failure to appraise the part of the property not taken has no effect on the resulting damages, and therefore, the party complaining of the failure to follow the before and after rule is not harmed. *Green Acres Memorial Park v. Mississippi State Highway Comm'n*, 246 Miss. 855, 153 So. 2d 286 (1963); *Morris v. Mississippi State Highway Comm'n*, 240 Miss. 783, 129 So. 2d 367 (1961).

¶14. In *Green Acres*, this Court was faced with a situation when one acre of a 103-acre cemetery was condemned. The expert value witness testified that there was no damage to the remaining part of the tract of land after the taking of one acre on the "back side" of the land. *Green Acres*, 153 So. 2d at 288. The Court held that it was not error for the appraiser to fail to appraise the entire parcel when he believed that the remainder was not damages as a result of the taking of one acre, causing no change in the result. *Id.* at 290.

¶15. In *Morris*, the Highway Commission condemned all of the property on the north side of a highway and did nothing to affect the property on the south of the highway. *Morris*, 240 Miss. at 786. The Commission's appraisers did not appraise the property on the south, because it was not affected in any way by the taking of the property on the north side. *Id.* at 786-87. This Court found that because the before value and the after value of the land south of the new facility would be the same, the failure of the witnesses to appraise that part of the land had no effect on the resulting damages. *Id.* at 792. The Court reasoned that admission of the testimony of the appellees witnesses could not harm the appellants, because the witnesses would have arrived at the same damages either way. *Id.*

¶16. In the case sub judice, it was never contended by the appraisers, or any of the parties, that the Highway Commission's taking of the strip of land caused any damage to the remainder. All damage claimed to the remainder of the property resulted from the loss of access to the frontage road. However, the use of the remaining property was the same, which was agricultural or timberland, to which both parties agree. Therefore, the before and after value of the remaining land would be the same.

¶17. Johnny Coombs, the appraiser for the Fires, said that the balance of the property would not be affected by the taking, but this statement in and of itself does not bring this case within the exception to the before and after rule recognized in *Hillman* and applied in *Green Acres* and *Morris*. An appraisal of only the part taken, where less than the whole is involved, ignores the fact that severance of a part of a tract may affect the value of the remainder. *Sanderson Farms*, 324 So. 2d at 244. Size, use, location, topography and like factors determine the value of the land. *Id.* "Part of the *Hillman* rationale is that the true effect of taking less than the whole of a tract of land can be determined only with the benefit of an appraisal of the whole, before and after a taking." *Id.*

¶18. In the instant case, Coombs testified, using the proper fair market value rule, that he simply did not believe there was any injury to the remaining part of the plot of land after the severance of one acre on the "back side." Moreover, the facts were submitted to the jury on proper instructions as to the damages due the owner under the "before and after rule" as described previously. Therefore, the verdict of the jury was correctly based upon the "before and after rule" in determining the damages to appellant as a result of the injury to its property. *Green Acres*, 246 Miss. at 864.

### III. HIGHEST AND BEST USE

¶19. Land sought to be condemned should be appraised with reference to any use to which it is reasonably adapted, and therefore, the best or most valuable use to which the property could reasonably be expected to be adapted is the use which should be considered, regardless of the current use of the property. *Mississippi State Highway Comm'n v. Brooks*, 239 Miss. 308, 316-317, 123

So. 2d 423, 427 (1960). To warrant admission of testimony as to the value for purposes other than that which the land is being put, or to which use is limited by ordinance at the time of the taking, the owner must first show: (1) that the property is adaptable to the other use; (2) that it is reasonably probable that the property will be put to the other use within the immediate future, or within a reasonable time; (3) and that the market value of the land has been enhanced by the other use for which it is adaptable. *Mississippi Highway Comm'n v. Rogers*, 236 Miss. 800, 112 So. 2d 250 (1959).

¶20. In *Mississippi State Highway Comm'n v. Wagley*, 231 So. 2d 507, 509 (Miss. 1970), this Court stated:

> [m]ere speculative uses cannot be considered. There must be some probability that the land would be used within a reasonable time for the particular use to which it is adapted. . .There must be a present demand for the land for such purpose or a reasonable expectation of such demand in the near future.

¶21. The Commission contends that Coombs did not lay the proper predicate for testifying that the highest and best use of the subject property is residential lots. This requires an analysis of the three factors listed in *Rogers*. To show that the subject property was adaptable to other uses, the Fires rely on the evidence presented by Melisande Stephens, the Commission's expert, that the four requirements for classifying property as residential were met: legally permissible, physically possible, financially feasible, and most profitable. To show that the market value of the land has been enhanced by the other use for which it is adaptable, again the Fires point to Stephens's testimony. She conceded that if the property was classified as residential, it could sell for $2,000 per acre, much more profitable than the $600 per acre value for agricultural use.

¶22. The Commission takes issue with the second factor that must be established to show that the land has an alternative highest and best use--that it is reasonably probable that the land will be put to the other use within the immediate future or within a reasonable time. The Commission argues that the testimony by Coombs does not address a present demand for residential property or the reasonable expectation of such demand in the near future. It says that Coombs only spoke of "steady growth" and only said that it was "likely" that the property would be needed for residential use.

¶23. Again, however, the Fires rely on Stephens's testimony on cross-examination. At trial, she did discuss the four factors for establishing the highest and best use of the property. The Fires' attorney tried to go through those factors to show that the highest and best use *for the property to be taken* is residential. Stephens responded that she was not valuing just the property taken; she was valuing the total property. In sum, the Commission contends that Stephens never conceded that the property taken had a residential highest and best use. Whether Stephens actually conceded this point, though, is of little consequence. She established that the property to be taken could meet the four factors for establishing highest and best use.

¶24. On direct examination, Coombs testified that the subject property was adaptable to being a residential lot, saying that it had community water, natural gas, electrical service, and cable television, along with suitable terrain. He stated that it was likely that the property would be needed for residential use. However, there was also testimony regarding the surrounding community, including that adjacent property once served as a residential trailer park, that cable television lines would be put

on the north side of the property once the road would be constructed, and that the presence of people up and down the highway living in the vicinity indicated that the property could have houses on it. Despite the vagueness of some of Coombs's testimony, the combination of his and Stephens's testimony gave the jury enough evidence to determine that the property was adaptable to residential use, that the lots would be put to such use in the reasonable future, and that the market value of the land was enhanced for residential use.

## IV. COMPARABLE SALES

¶25. The Commission argues that the comparable sales used by Coombs should have been invalid because the proper predicate for laying testimony to highest and best use as residential property was improper. Because the testimony regarding alternative highest and best use was properly admitted, that position is now moot. The Commission alternatively argues that the residential lots used by Coombs did not meet the tests set forth by this Court of comparability to the subject property.

¶26. The Commission correctly states that in order to be admissible to support an appraisal, a sale must relate to land similar to and of like quality to that involved in the case and not be remote in time. *Mississippi State Highway Comm'n v. Daniels*, 108 So. 2d 854 (Miss. 1959); *Rogers*, 236 Miss. at 800, 112 So. 2d at 250 . However, in using comparable sales as a method of valuation, this Court does not require that the comparable sales be identical in every respect. *Mississippi State Highway Comm'n v. Franklin County Timber Co.*, 488 So. 2d 782, 785 (Miss. 1986). The trial judge has wide discretion in allowing testimony of comparable sales, and this Court encourages the judge to allow liberal cross-examination to permit testing of the true utility of the comparable sales. *Id.*; *Highway Development Co. v. Mississippi State Highway Comm'n*, 343 So. 2d 477, 481 (Miss. 1977). However, if the evidence shows that the comparables are entirely different from the property taken, then the valuation should be discredited. *Franklin County Timber*, 482 So. 2d at 785.

¶27. The land with which the subject property is being compared does not have to be of the same size or acreage, or approximately so, if the other criteria essential to a fair comparison are present, for to hold otherwise would make it almost impossible to find a comparable tract of land or a sale which could be used as a means of evaluating the fair market value of due compensation. *Pearl River Water Valley Supply Dist. v. Wood*, 172 So. 2d 196 (Miss. 1965).

¶28. The Commission analogizes the case *sub judice* to the situation in *Pearl River Water Valley Supply Dist. v. Wright*, 203 So. 2d 296 (Miss. 1967). In that case, this Court considered a situation where the landowner's appraisal expert attempted to compare the sales of small lots in a highly developed residential subdivision to a 13.8 acre tract occupied by a summer home, a barn and a caretaker's residence. The Court found that the small lots in the residential development were "nowise comparable" to the subject property and therefore refused to consider the testimony. *Id.* at 298.

¶29. The size of the parcels were not the same as the land being condemned. However, testimony reveals that the land on the comparable parcels were level and had water, gas, electrical, telephone and cable lines already set up. Testimony was also given that the fact that the comparables were not immediately close to the subject property did not affect the evaluation of the lots. Further, the Commission made little attempt to cross-examine the utility of the comparable sales. It cannot be said, then, that allowing the presentation of Coombs' comparable sale testimony was prejudicial or

erroneous. Noting this Court's recent decision, "[i]t is completely plausible that a piece of property. . .can have several highest and best uses, and that its value should not be calculated based upon the value of the dominant use. Our case law does not require that property have a constant per acreage value based upon a single best use." ***Oughton v. Gaddis***, 683 So. 2d 390, 395 (Miss. 1996).

## V. CONCLUSION

¶30. The Special Court of Eminent Domain did not err in allowing the testimony of Johnny Coombs. This case falls within the exceptions to the "before and after rule" mentioned in ***Hillman*** and explained in ***Green Acres*** and ***Morris***. Further, the presentation of Coombs's testimony regarding highest and best use of the property and comparable sales was not so prejudicial to the jury as to make its award of $57,620 excessive. We therefore affirm the jury verdict.

¶31. **JUDGMENT IS AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. SMITH, J., NOT PARTICIPATING.**

1. The ***Hillman*** court declined to apply this exception to the particular facts of that case.